<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                              |     |                              |
|------------------------------|-----|------------------------------|
|                              | :   |                              |
| LOSSE CISSE,                 | :   | **Hon. Stanley R. Chesler**  |
|                              | :   |                              |
| Petitioner,                  | :   |                              |
|                              | :   | Civil No. 07-4972 (SRC)      |
| v.                           | :   |                              |
|                              | :   |                              |
| MICHAEL CHERTOFF, etc., et al., | : | **OPINION**               |
|                              | :   |                              |
| Respondents.                 | :   |                              |
|                              | :   |                              |

**APPEARANCES**:

> LOSSE CISSE, A73 163 545
> Elizabeth Detention Center
> P.O. Box 2300
> Elizabeth, New Jersey 07201
> Petitioner <u>Pro</u> <u>Se</u>

> COLETTE R. BUCHANAN, ASSISTANT U.S. ATTORNEY
> CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
> 970 Broad Street, Suite 700
> Newark, New Jersey  07102
> Attorneys for Respondents

<u>**CHESLER**</u>, District Judge

Losse Cisse, a native and citizen of Ivory Coast, filed a Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2241 challenging his detention in the custody of the Department of

Homeland Security ("DHS").[1]  Respondents filed an Answer seeking dismissal of the Petition,

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135
(Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within
the Department of Homeland Security.  6 U.S.C. § 271(a).  The Act transferred the functions of
the Commissioner of INS to the Director of BCIS, 6 U.S.C. § 271(b), and abolished INS, 6

(continued...)

together with several certified documents.  Having thoroughly examined these documents and
considered the arguments of the parties, this Court will dismiss the Petition, without prejudice to
the filing of another petition after March 27, 2008, in the event that Petitioner's removal is not
reasonably foreseeable.

## I.  BACKGROUND

Losse Cisse, an immigration detainee who is confined at the Elizabeth Detention Center,
challenges his detention by the DHS.  The facts are not in dispute.  Petitioner legally entered the
United States on November 28, 1992, as a nonimmigrant visitor with permission to remain until
December 27, 1992.  Petitioner did not depart on or after December 27, 1992.  On September 15,
1993, Petitioner filed an application seeking asylum.  On April 9, 1996, an asylum officer
referred the matter to an Immigration Judge.

On April 12, 1996, the Immigration and Naturalization Service ("INS"), the predecessor
of DHS, issued and served an order to show cause charging Petitioner with removal pursuant to
Section 241(a)(1)(B) of the INA, on the ground that he remained in the United States after
December 27, 1992, without authorization, after being admitted as a nonimmigrant from Ivory
Coast on November 28, 1992.  (Petitioner was not taken into custody.)  After conducting a
hearing, on December 31, 1997, an Immigration Judge denied Petitioner's requests for asylum,
withholding of removal and voluntary departure, and ordered Petitioner removed to the Ivory
Coast.  Petitioner filed a timely appeal.  On April 4, 2002, the Board of Immigration Appeals
dismissed the appeal and the order of removal became final.

---

[1](...continued)
U.S.C. § 291.  Accordingly, DHS replaced INS on March 1, 2003.

On September 3, 2002, the INS issued and mailed to Petitioner a notice directing him to surrender for removal on October 25, 2002.  Petitioner did not surrender.

On December 13, 2004, Petitioner filed a motion to reopen the removal proceeding with the Board of Immigration Appeals.  In a decision dated January 26, 2005, the BIA denied the motion as untimely because it was not filed within 90 days of the date the order of removal became final on April 4, 2002.  Alternatively, the BIA construed the motion as a motion to reopen in order to apply for asylum based on changed circumstances and denied the motion on the ground that Petitioner did not establish changed circumstances in the Ivory Coast.

On March 14, 2007, the New York City Fugitive Operations Unit apprehended Petitioner and took him into custody of the DHS.  Petitioner has remained in custody since that date.  On March 24, 2007, the DHS issued a warning for failure to depart and an instruction sheet listing the actions Petitioner was required to take within 30 days.  Such actions included submitting a passport to the DHS, applying for a travel document from the embassy or consulate of Petitioner's native county and complying with all instructions, and submitting a birth certificate or other document indicating citizenship or place of birth, to the DHS.  On March 30, 2007, Robert J. Margist, Acting Assistant Field Office Director of the Detention and Removal Office of the DHS, sent a letter to the Republic of Cote D'Ivoire (Ivory Coast) requesting travel documents for Petitioner.

On July 12, 2007, Deportation Officer Marcus Cistaro conducted a post order custody review of Petitioner's detention pursuant to 8 C.F.R. § 241.1.  Deportation Officer Marcus Cistaro made the following recommendation:

3

>NYC DRO Fugitive Operations Unit encountered the subject at the
>40th Precinct of the New York City Police Department and placed
>him into ICE custody on 03/14/2007.  The subject was served an I-
>229(a) while in ICE custody on 03/24/2007.  Subject has not
>provided ICE with any evidence that he is trying to obtain a travel
>document.
>
>In consideration of the subject's lengthy history of disregard for the
>Immigration Laws of the United States and failure to comply with
>ICE in obtaining a travel document, he would clearly appear to
>pose a risk of flight if released from ICE custody at this time.  It is
>therefore, recommended that the subject remain in custody pending
>the issuance of a travel document.

(Post Order Custody Review Worksheet, Officer Comments/Analysis & Recommendation,

signed by Marcus Cistaro on July 12, 2007.)

On September 26, 2007, Scott Weber, Field Office Director, concurred with the

recommendation of Marcus Cistaro, and determined to continue Petitioner in custody.  On the

same date, Scott Weber issued a Notice of Failure to Comply, pursuant to 8 C.F.R. § 241.4(g),

informing Petitioner that his custody status has been reviewed and that he will not be released at

this time.  The Notice provides, in relevant part:

>On March 24, 2007, you were advised . . . of specific requirements
>to complete and were given 30 days to comply with your obligation
>to assist in obtaining a travel document.  The burden to obtain a
>travel document for your removal does not solely rest with ICE . . .
>[Y]ou are required to make timely and good faith efforts to obtain
>travel or other documents necessary for your removal from the
>United States.  If you fail to make these efforts, Section
>241(a)(1)(C) allows for the extension of the removal period. As
>you have failed to make any attempt to assist with a travel
>document, you have failed to comply with your obligation and are
>acting to prevent your removal from the United States.  The
>removal period is therefore extended in your case.
>
>As you are still within the removal period, you are to remain in ICE
>custody until you demonstrate that you are making reasonable

4

> efforts to comply with the order of removal, and that you are
> cooperating with ICE's efforts to remove you.
>
> You are also advised that continued willful failure or refusal on
> your part to make timely application in good faith for travel or
> other documents necessary for your departure, or any conspiracy or
> actions to prevent your removal or obstruct the issuance of a travel
> document, may subject you to criminal prosecution under 8 U.S.C.
> § 1253(a).

(Letter from Scott Weber dated Sept. 26, 2007.)

On September 27, 2007, Maurice Williams, Immigration Enforcement Agent, gave

Petitioner Form I-229(a), Warning for Failure to Depart.  The Warning informed Petitioner that

Section 241(a)(1)(C) of the INA provides for the "extension of the statutory removal period if the

alien refuses, during the removal period, to make application in good faith, for a travel or other

document necessary for the alien's removal or departure of conspires or acts to prevent the

alien's removal subject to an order of removal."  (Warning for Failure to Depart, dated Sept. 27,

2007.)  However, on September 27, 2007, the Deportation Officer signed a document stating that

Petitioner had in fact cooperated: "The subject has complied with the request(s) on the attached

sheet in the following manner: Subject was witnessed contacting the Consulate General of Ivory

Coast on 9/27/07 by Deportation Officer Williams (Acting) to facilitate issuance of travel

documents."  (Notice dated Sept. 27, 2007.)

In the Answer, the DHS argues that Petitioner's detention is statutorily authorized and

does not violate the United States Constitution.  Respondents contend that, because Petitioner did

not cooperate in obtaining travel documents until September 27, 2007, pursuant to 8 U.S.C. §

1231(a)(1)(C), the 90-day removal period did not begin until that date.  Accordingly,

Respondents argue that, as interpreted by Zadvydas v. Davis, 533 U.S. 678 (2001), section

1231(a)(6) authorizes the DHS to detain Petitioner at least during the six-month presumptively reasonable period ending on March 27, 2008.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).

This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his constitutional rights.  See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

B.  Legality of Detention

Once an alien such as Petitioner is ordered removed, the INA requires the Attorney General to remove him or her from the United States within a 90-day "removal period."  See 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of

6

90 days (in this section referred to as the 'removal period')").  Section 1231(a)(2) requires the

Attorney General to detain an alien during this 90-day removal period:

> During the removal period, the Attorney General shall detain the
> alien.  Under no circumstance during the removal period shall the
> Attorney General release an alien who has been found inadmissible
> under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable
> under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2); see also Zadvydas v. Davis, 533 U.S. 678,  683 (2001).

Under § 1231(a)(1)(B), that the removal period begins on the latest of several events:

> [t]he removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders
> a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an
> immigration process), the date the alien is released from detention
> or confinement.

8 U.S.C. § 1231(a)(1)(B).

If the DHS does not remove the alien within the 90-day removal period, then § 1231(a)(6)

authorizes the post-removal-period detention of the alien.  Specifically, §  1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182
> of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or
> 1227(a)(4) of this title or who has been determined by the Attorney
> General to be a risk to the community or unlikely to comply with
> the order of removal, may be detained beyond the removal period
> and, if released, shall be subject to the terms of supervision in
> paragraph (3).

8 U.S.C. § 1231(a)(6).

In <u>Zadvydas</u>, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas</u>, 533 U.S. at 689.  However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." <u>Id.</u> at 699.  To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. <u>Id.</u> at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Id.</u>

In 2005, the Supreme Court ruled in <u>Clark v. Martinez</u>, 543 U.S. 371 (2005), that the post-removal-period detention of two inadmissible aliens from Cuba who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable.  <u>See</u> <u>Clark v. Martinez</u>, 543 U.S. at 384.  The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)." <u>Id.</u> at 386.  Under those circumstances, the Court held that the petitions should have been granted.  <u>Id.</u>

In this case, Respondents argue that Petitioner's removal period was extended because he failed to cooperate and he thereby acted to prevent his removal prior to September 27, 2007.

Respondents correctly note that § 1231(a)(1)(C) extends the removal period and authorizes continued detention during any period the alien refuses to cooperate in obtaining travel documents.  The statute provides:  "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The United States Court of Appeals for the Third Circuit has not construed or applied 8 U.S.C. § 1231(a)(1)(C) in a published decision, although it cited the Ninth Circuit's decision in Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003), with approval, in an unpublished opinion.  See Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003).  In Pelich, the Ninth Circuit determined that 8 U.S.C. § 1231(a)(1)(C) is an exception to Zadvydas.  The Court affirmed the district court's order denying habeas relief pursuant to § 1231(a)(1)(C) where Pelich refused to fill out a Polish passport application after the Polish consulate sent a letter explicitly reserving its determination of Pelich's citizenship status pending review of the passport application.  In addition, Pelich had provided DHS with conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality.  Id. at 1059. Under these circumstances, the Ninth Circuit determined that Pelich "cannot legitimately object to his continued detention when that very detention is caused by his own conduct [and] Pelich could likely effectuate his own removal (and free himself from detention) by providing the . . . requested information.  It naturally follows that his detention is not destined to be indefinite." Id. at 1061. The Court emphasized that "Zadvydas does not save an alien who fails to provide

9

requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock."  Id. at 1060.  See also Lema v. INS, 341 F.3d 853 (9th Cir. 2003); Camara v. Gonzalez, 2007 WL 4322949 (D.N.J. Dec. 26, 2007).

This Court agrees with Respondents that, given Petitioner's history of non-cooperation, § 1231(a)(1)(C) extended the removal period until Petitioner fully cooperated on or about September 27, 2007.  Because the presumptively reasonable six-month period of detention under § 1231(a)(6) will not expire until March 27, 2008, this Court will dismiss the Petition.  The dismissal is without prejudice to Petitioner's filing another petition after March 27, 2008, in the event that there is no significant likelihood of his removal in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701.

### III.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition without prejudice to the filing of another petition after March 27, 2008, in the event that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.


  s/ Stanley R. Chesler
**STANLEY R. CHESLER, U.S.D.J.**


DATED: March 17, 2008

10